DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SALVATORE MIGLINO,**
Appellant,

v.

**UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY** and
**HARVEY IRA STEIN,**
Appellees.

No. 4D13-4161

[August 19, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No. 12-13010 (09).

Joseph S. Kashi of Sperry & Kashi, P.A., Plantation, for appellant.

Sara M. Sandler and John P. Joy of Walton Lantaff Schroeder & Carson LLP, Fort Lauderdale, for appellee Universal Property & Casualty Insurance Company.

CIKLIN, C.J.

Salvatore Miglino ("Miglino") timely appeals an order granting summary final judgment in favor of Universal Property & Casualty Insurance Company ("Universal") and determining that, pursuant to an exclusion in a homeowner's insurance policy, Universal had no duty to indemnify or defend its insured in a separate personal injury action arising from a shooting. Finding no error, we affirm, and we write to address an issue of first impression in Florida regarding the subject policy exclusion.

The insured is Harvey Stein ("the insured"). The insured lent a gun to his sister, Cheryl Hepner ("the sister"), and the sister then used the gun to shoot her son-in-law, Miglino, outside of her home. Miglino and the sister's daughter were in the midst of divorce proceedings at the time.

Miglino brought a personal injury action against the insured and the sister, alleging that the sister intentionally shot him and asserting a negligent entrustment claim against the insured. Universal initially

defended the insured in Miglino's action under a reservation of rights,[1] but then filed an action for a judgment declaring that it had no duty of defense or indemnity with regard to the personal injury action under "exclusion k." of the insured's homeowner's insurance policy.

The insurance policy states that, in the event of a suit brought against the insured because of "'bodily injury' . . . caused by an 'occurrence,'" Universal will pay for the insured's defense and the amount of damages for which the insured is liable. Exclusion k. of the policy excludes payments to others for damages "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse." The policy does not define "physical abuse."

Universal moved for summary judgment, arguing that, pursuant to exclusion k., there was no coverage under the policy for the intentional shooting of Miglino. The trial court agreed and granted the motion.

On appeal, Miglino argues that the trial court erred in determining that exclusion k. applies to exclude coverage because the shooting does not fit within the dictionary or case law definitions of physical abuse, and therefore, the insurance policy exclusion does not apply to the shooting. He specifically likens the definition of physical and mental abuse to torture or actions meant to humiliate or demean. We must disagree, as the plain meaning of the words "physical abuse" includes an instance such as the subject shooting.

We review the order granting summary judgment de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (citation omitted).

With regard to insurance contract interpretation, the Florida Supreme Court has explained:

> Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the

---

[1] When an insurance company disputes coverage for one or more claims under an insurance policy, it may choose to provide a defense for an insured under a "reservation of rights." *See generally Jim Black & Assocs., Inc. v. Transcon. Ins. Co.*, 932 So. 2d 516, 517-18 (Fla. 2d DCA 2006). Where it is ultimately determined that the insurance company had no duty to defend, under a proper reservation of rights, the insurance company may be entitled to reimbursement for its defense expenditures. *See id.* at 518.

policy as written. In construing insurance contracts, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. Courts should avoid simply concentrating on certain limited provisions to the exclusion of the totality of others. However, policy language is considered to be ambiguous if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.

*Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (internal citations and quotation marks omitted).

The lack of a definition of a term in a policy does not render it ambiguous or in need of interpretation by the courts, but rather such "terms must be given their every day meaning and should be read with regards to ordinary people's skill and experience." *Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1003 (Fla. 4th DCA 2010) (citation omitted). "Florida courts will often use legal and non-legal dictionaries to ascertain the plain meaning of words that appear in insurance policies." *Id.* (citation omitted).

Black's Law Dictionary defines "physical," in pertinent part, as "[r]elating or pertaining to the body, as distinguished from the mind or soul or the emotions." BLACK'S LAW DICTIONARY 1147 (6th ed. 1990). In pertinent part, Black's defines "abuse" as "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury," and "[t]o injure (a person) physically or mentally." BLACK'S LAW DICTIONARY 10 (8th ed. 2004). Similarly, a non-legal dictionary defines abuse as "[t]o hurt or injure by maltreatment." THE AMERICAN HERITAGE DESK DICTIONARY 5 (1981) (emphasis added).

The plain meaning of "physical abuse" encompasses the intentional shooting of Miglino by the sister. Such an act clearly constitutes "physical . . . maltreatment," "physical injury," and "hurt or injur[y] by maltreatment" as described in the definitions used in deciding this issue.

Miglino argues that the exclusion does not apply because there was no torture, torment, humiliation, or degradation present in the sister's act of shooting him. He cites case law from other jurisdictions interpreting the same or a highly similar exclusion. *See, e.g., Merrimack Mut. Fire Ins. Co. v. Ramsey*, 982 A.2d 195, 197-98 (Conn. App. Ct. 2009) (finding that "[t]he stabbing of the defendant [twenty-four times] clearly constituted physical abuse within the language of the policy"); *Auto-*

3

*Owners Ins. Co. v. Am. Cent. Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1999) (holding that acts of fraternity hazing, such as paddling, forcing consumption of foods, kicking, pushing, and hitting, "clearly constituted physical and mental abuse"). Although the facts of these cases included tormenting or humiliating acts, none of the courts held that these elements were necessary for the acts in question to rise to the level of physical abuse or for the policy exclusion to apply. Furthermore, we have found no definitions that include the words torture, torment, humiliate, or any of the other similar words that Miglino insists are a part of "physical abuse." Common sense and common meaning dictate otherwise as well.

Consequently, we affirm. We leave for another day, however, the question of which other types of occurrences may reasonably be excluded within the framework of the policy exclusion.

*Affirmed.*

CONNER, J., and BOORAS, TED, Associate Judge, concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**