NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13308


DORCHESTER MUTUAL INSURANCE COMPANY  <u>vs</u>.  LEONARD MIVILLE &
others.[1]



Norfolk.     January 4, 2023. – March 16, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Kafker, Wendlandt,
& Georges, JJ.



<u>Insurance</u>, Homeowner's insurance, Construction of policy,
     Insurer's obligation to defend, Coverage.  <u>Declaratory
     Relief</u>.  <u>Words</u>, "Physical abuse."




     <u>C</u><u>ivil action</u> commenced in the Superior Court Department on
June 19, 2017.

     The case was heard by <u>Rosemary Connolly</u>, J., on a motion
for summary judgment.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     <u>Ryan P. Gilday</u> for Leonard Miville.
     <u>John P. Graceffa</u> (<u>Lawrence M. Slotnick</u> also present) for
the plaintiff.




---

[1] Kim Brengle, Laurence Brengle, and William Brengle.

LOWY, J.  Once again, we are presented with the question whether, under the terms of a homeowners' insurance policy, certain conduct by an insured constitutes "physical abuse" thereby precluding coverage under a policy exclusion exempting coverage for "[b]odily injury . . . arising out of sexual molestation, corporal punishment or physical or mental abuse." In Dorchester Mut. Ins. Co. v. Krusell, 485 Mass. 431, 439-440 (2020) (Krusell), we concluded that the term "physical abuse" as used in an identical policy exclusion -- commonly referred to as the abuse and molestation exclusion -- was ambiguous. Interpreting the exclusion through the lens of an objectively reasonable insured, we concluded that "physical abuse" applies "to a limited subset of physically harmful treatment, where the treatment is characterized by an 'abusive' quality such as a misuse of power or, perhaps, conduct so extreme as to indicate an abuser's disposition towards inflicting pain and suffering." Id. at 446.  Because the conduct in that case -- a single push by the insured -- contained no such "abusive" quality, we held that the abuse and molestation exclusion did not preclude coverage.  Id.

In this case, the insured, William Brengle, initiated an unprovoked attack on Leonard Miville by punching him in the head and repeatedly kicking him after he had fallen, causing Miville to sustain serious injuries.  In this action for declaratory

relief, Dorchester Mutual Insurance Company (Dorchester Mutual) filed a motion for summary judgment arguing that, under the terms of a homeowners' insurance policy it issued to Brengle's parents, the abuse and molestation exclusion exempted coverage for claims arising out of the incident because the conduct constituted "physical abuse" under our holding in Krusell, 485 Mass. at 446. A judge in the Superior Court agreed and granted summary judgment in favor of Dorchester Mutual.

We conclude that the term "physical abuse," in the context of the abuse and molestation exclusion, requires an imbalance or misuse of power attendant to the physically harmful conduct. Because the attack here was not achieved by capitalizing on or exploiting an imbalance of power, it does not fall within the meaning of "physical abuse" as it is used in the abuse and molestation exclusion. Therefore, the abuse and molestation exclusion does not exempt coverage in these circumstances, and the summary judgment in favor of Dorchester Mutual on this basis is reversed.

Background. 1. Underlying incident. The following facts are undisputed. At approximately 5:45 A.M. on November 22, 2016, Miville, age sixty-one, parked his truck outside the home of his girlfriend, Jennifer Barrett, to drive her to work. When Barrett did not answer her telephone, Miville got out of his truck and walked to her front door. Brengle, age thirty, lived

with his parents in the home next to Barrett's and was outside on his front porch when Miville arrived. After receiving no response when he knocked on Barrett's front door, Miville stood on the sidewalk between the two homes looking up to Barrett's bedroom window. Brengle stood on the side of his porch and yelled at Miville, "F you, what are you doing here?" Miville responded that he was Barrett's boyfriend and that he and Brengle had met previously. Brengle, however, continued yelling at Miville, ordering him to leave the area and calling him evil.

Miville told Brengle to "keep it down" so he would not wake the neighbors. Suddenly, Brengle jumped off the porch and punched Miville in the "left eye and cheek." Miville fell to the ground, hitting his head on the sidewalk. Brengle proceeded to kick Miville in the jaw, clavicle, and leg. Miville recalled asking Brengle to stop, but at some point, he lost consciousness and next remembered awaking to the police asking him questions.

Miville sustained serious injuries, including a fractured cheek and orbital bone. Brengle was charged with assault and battery on a person sixty years of age or older, and assault and battery by means of a dangerous weapon (shod foot) on a person age sixty or older; he later pleaded guilty to those charges.

2. The policy. Dorchester Mutual issued a homeowners' insurance policy to Brengle's parents for the period of April 25, 2016, through April 25, 2017. The policy provided personal

liability coverage for claims "brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies."  "Insured" is defined by the policy as the policyholders and the "residents of [the policyholders'] household who are . . . relatives."[2] "Occurrence" is defined as "an accident, . . . which results, during the policy period, in:  . . . '[b]odily injury.'"

The policy contained multiple exclusions from personal liability coverage, including the abuse and molestation exclusion, which excluded coverage for "'[b]odily injury' . . . arising out of sexual molestation, corporal punishment or physical or mental abuse."  "Physical abuse" is not defined in the policy.

3.  Prior proceedings.  After the incident, Miville sent a claim letter to Dorchester Mutual seeking coverage under Brengle's parents' homeowners' insurance policy for the injuries he sustained.  Dorchester Mutual denied coverage.  Thereafter, Miville commenced an action against Brengle and his parents, asserting claims of negligence and assault and battery against Brengle and negligent supervision claims against Brengle's parents.

---

[2] It is undisputed that Brengle was an insured under the policy.

Dorchester Mutual commenced this action seeking a judgment declaring that, under the terms of the policy, it had no duty to defend or indemnify Brengle or his parents for the personal injury claims brought against them by Miville.[3]  Dorchester Mutual filed the present motion for summary judgment, asserting that Brengle's conduct constituted "physical abuse" under the terms of the abuse and molestation exclusion.  Thus, Dorchester Mutual argued, Miville's injuries were not covered by the policy, and it had no duty to defend or indemnify Brengle or his parents.  The judge agreed and granted judgment in Dorchester Mutual's favor.  Miville appealed.

In an unpublished memorandum and order pursuant to its rule 23.0, a panel of the Appeals Court reversed, concluding that the incident did not amount to "physical abuse" under Krusell, 485 Mass. at 446, because it lacked the necessary "'abusive' quality" and, therefore, fell outside the policy exclusion.  See Dorchester Mut. Ins. Co. v. Brengle, 100 Mass. App. Ct. 1133

---

[3] Dorchester Mutual's original complaint sought a declaration that coverage was barred for the claims against Brengle under two policy exclusions:  (1) the intentional acts exclusion and (2) the abuse and molestation exclusion. Dorchester Mutual subsequently amended its complaint to include Brengle's parents as defendants.  The amended complaint sought a declaration that coverage was precluded for the claims against Brengle's parents under the abuse and molestation exclusion.  On summary judgment, only the abuse and molestation exclusion was at issue.  We therefore express no opinion in this appeal on the applicability of the intentional acts exclusion to Miville's claims against Brengle.

(2022). We allowed Dorchester Mutual's application for further appellate review.

Discussion. 1. Standard of review. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Krusell, 485 Mass. at 435, quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). "We review decisions allowing summary judgment de novo." Krusell, supra.

2. Interpretation of insurance policies. "The interpretation of an insurance policy is a question of law." City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 640 (2006). "Like all contracts, an insurance policy is to be construed according to the fair and reasonable meaning of its words." Id. We consider the language of an insurance policy as a whole, "without according special emphasis to any particular part over another," Surabian Realty Co. v. NGM Ins. Co., 462 Mass. 715, 718 (2012), and where possible, giving meaning and effect to every word, see Masonic Temple Ass'n of Quincy v. Patel, 489 Mass. 549, 554 (2022) (Patel).

"If free from ambiguity, an exclusionary clause, like all other provisions of an insurance contract, must be given its usual and ordinary meaning." Hakim v. Massachusetts Insurers'

Insolvency Fund, 424 Mass. 275, 281 (1997).  However, "[a]ny ambiguities in the language of an insurance contract are interpreted against the insurer who used them and in favor of the insured."  Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628 (2007).  "This rule of construction applies with particular force to exclusionary provisions."  Id., quoting Hakim, supra at 282.

While "[a]n insured bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy," once that burden has been met, "the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case." Boazova v. Safety Ins. Co., 462 Mass. 346, 351 (2012).  "When in doubt as to the proper meaning of a term in an insurance policy, we 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" Krusell, 485 Mass. at 437, quoting Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 362 (2011).

3.  Interpretation of "physical abuse" in abuse and molestation exclusion.  In Krusell, 485 Mass. at 432-433, we were called to interpret the term "physical abuse," in an identical abuse and molestation exclusion, to determine whether the exclusion precluded coverage where a twenty-three year old

insured pushed a sixty-two year old man, causing the latter to fall and sustain serious, permanent injuries.

Guided by our principles of interpretation, we first considered whether the words "physical abuse," as used together in the policy, were ambiguous.  Although it was clear that the term "physical" referred to "of or pertaining to the body," Krusell, 485 Mass. at 438, quoting Webster's New Universal Unabridged Dictionary 1461 (2003), the plain meaning of "abuse," and varying courts' interpretations of the term, revealed that it was susceptible to two diverging meanings:  the first, connoting "any conduct whatsoever that causes physical harm," and the second, contemplating "a subset of physically harmful conduct characterized by an 'abusive' quality, such as an imbalance of power."  Krusell, supra at 439.  See Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998) ("A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one").

Concluding that the term "physical abuse" was ambiguous, we turned to the insured's reasonable expectations as to coverage, looking specifically to the language of the policy, the history of abuse and molestation exclusions, and cases, statutes, and regulations in which conduct had or had not been characterized as "abuse."  Krusell, 485 Mass. at 440-446.  These sources led

us to conclude that "a reasonable insured would interpret 'physical abuse' to apply only to a limited subset of physically harmful treatment, where the treatment is characterized by an 'abusive' quality such as a misuse of power or, perhaps, conduct so extreme as to indicate an abuser's disposition towards inflicting pain and suffering." Id. at 446.

In this case, both parties agree that, because "physical abuse" is not defined by the policy, our conclusion in Krusell, 485 Mass. at 446, as to how a reasonable insured would interpret "physical abuse" within the meaning of the abuse and molestation exclusion controls. They disagree on the application of that interpretation to these facts.

Miville argues that the incident here was not "physical abuse" because there was no power imbalance between Brengle and himself, and the incident was not "so extreme" as to reflect Brengle's disposition to inflict pain and suffering. Krusell, 485 Mass. at 446. Dorchester Mutual, however, contends that the incident possessed both "abusive" qualities mentioned in Krusell, supra. Specifically, Dorchester Mutual maintains that, because Brengle was thirty years old and Miville was over sixty years old at the time of the incident, this age difference coupled with Miville's "advancing years" demonstrated a physical power imbalance between the two. Additionally, Dorchester Mutual argues that the incident was both violent and unprovoked,

such that Brengle's disposition to inflict pain and suffering can be inferred from his conduct.

a.  Policy language.  In Krusell, 485 Mass. at 440-446, we considered an imbalance or misuse of power to be the distinguishing feature that transforms physically harmful conduct to "physical abuse."  Beginning with the language of the policy, we reasoned that an interpretation of "physical abuse" as any physically harmful conduct, as opposed to conduct with an abusive quality like a misuse of power, would render superfluous the terms "sexual molestation" and "corporal punishment," as both are forms of physically harmful conduct.  Id. at 440.  See Patel, 489 Mass. at 554 ("if possible, 'every word in a policy should be given meaning'" [citation omitted]).  Moreover, we observed that a broad interpretation of "physical abuse" seemingly would encompass accidental conduct causing physical harm, which would undermine the basic purpose of purchasing a homeowners' insurance policy.  See Krusell, supra.  See also Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986) ("Clearly, the manifest design of homeowners' insurance is to protect homeowners from risks associated with the home and activities related to the home").

Most persuasive of an interpretation requiring an element of power, however, is the term's location within the policy -- the primary source from which a reasonable insured would glean

its meaning.  Immediately preceding the term "physical abuse" in the abuse and molestation exclusion are the terms "sexual molestation" and "corporal punishment."  As we observed, "[w]ords are, at least in part, defined by the company they keep."  Krusell, 485 Mass. at 440.  Although "sexual molestation" and "corporal punishment" are not defined by the policy, both forms of conduct generally involve an imbalance or exploitation of power between the perpetrator and the victim.  See Black's Law Dictionary 1204 (11th ed. 2019) (defining "molestation" as "[t]he act of making unwanted and indecent advances to or on someone, esp[ecially] for sexual gratification"); Webster's Third New International Dictionary 510 (2002) (defining "corporal punishment" as "punishment administered by an adult [as a parent or a teacher] to the body of a child ranging in severity from a slap to a spanking").  See also Commonwealth v. Dorvil, 472 Mass. 1, 9, 10 n.3 (2015) (discussing corporal punishment in context of parent physically disciplining child); Commonwealth v. Helfant, 398 Mass. 214, 227 (1986) ("sexual molestation" where doctor entered homes of young patients, injected them with Valium, and sexually assaulted them while they were "physically and mentally unable to express resistance").

While the term "physical abuse" divorced from context may be susceptible to multiple interpretations, under the

interpretive principle of noscitur a sociis, its meaning in the policy is limited by the terms it accompanies.[4]  See People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 287 (2017), quoting Commonwealth v. Hamilton, 459 Mass. 422, 432 (2011) ("the canon of noscitur a sociis . . . counsels that 'ordinarily the coupling of words denotes an intention that they should be understood in the same general sense'"); Commonwealth v. Gallant, 453 Mass. 535, 542 (2009), quoting H.J. Alperin & L.D. Shubow, Summary of Basic Law § 19.10, at 846 (3d ed. 1996) ("The principle of noscitur a sociis . . . suggests 'that a word gains meaning from others with which it is associated'"); Cluff v. Mutual Benefit Life Ins. Co., 13 Allen 308, 316 (1866), S.C., 99 Mass. 317 (1868) (applying maxim of noscitur a sociis to interpretation of insurance policy).  Thus, looking solely at the language of the policy, it appears evident that "physical abuse," like "sexual molestation" and "corporal punishment," refers to conduct achieved by capitalizing on or exploiting an imbalance of power.

---

[4] Noscitur a sociis means "it is known by its associates" (citation omitted).  People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 287 (2017).  This canon of construction is a broader formulation of the canon of ejusdem generis, which means "of the same kind or class" (citation omitted).  Id.  See Commonwealth v. Gallant, 453 Mass. 535, 542 (2009).

b.  <u>History of abuse and molestation exclusion</u>.  This more narrow interpretation of physical abuse requiring a power element is supported further by the context in which the abuse and molestation exclusion originated.  In the early 1980s, a surge of sexual abuse claims arose against clergy members within the Roman Catholic Church.  See Bartley, The Liability Insurance Regulation of Religious Institutions After the Catholic Church Sexual Abuse Scandal, 16 Conn. Ins. L.J. 505, 505-510 (2010).  Litigation surrounding insurance coverage for these and other similar claims soon erupted.  See <u>id</u>. at 517-529.  See also Swisher & Mason, Liability Insurance Coverage for Clergy Sexual Abuse Claims, 17 Conn. Ins. L.J. 355, 360, 368-375 (2010).  A majority of States, including Massachusetts, determined that sexual abuse claims brought against an accused abuser were not covered by the terms of an accused's liability policy that excluded coverage for expected or intended bodily injury.  See <u>Worcester Ins. Co</u>. v. <u>Fells Acres Day Sch., Inc</u>., 408 Mass. 393, 398 n.6, 401-403 (1990), and cases cited ("intent to injure may be inferred from the intentional commission of an inherently injurious act such as forcible sexual abuse").

Many victims, then, also sought recovery from the organizations responsible for employing or supervising those accused of sexual abuse under theories of negligent supervision or negligent hiring.  See <u>Krusell</u>, 485 Mass. at 441, citing

Bartley, 16 Conn. Ins. L.J., at 517-518, 530. "Because the basis for such claims was the negligent conduct of a third party, rather than the intentional conduct of the alleged abuser, existing policy exclusions for intentional acts were insufficient to shield insurers from coverage obligations." Krusell, supra. It was against this backdrop that insurance companies included abuse and molestation exclusions in their policies.

In 1987, the Insurance Services Office, Inc., promulgated the abuse and molestation exclusion as a form endorsement for insurers to include in their general liability policies as a means to preclude coverage for all claims arising out of abuse or molestation. See Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012). The exclusion was to be "used with '[o]rganizations that have care or custody of others -- schools, hospitals, nursing homes, day care centers, etc.'" Id., quoting Harper vs. Gulf Ins. Co., U.S. Dist. Ct., No. 01-CV-201-J (D. Wyo. Dec. 20, 2002). See D.S. Malecki & D.D. Thamann, Commercial General Liability Coverage Guide 203 (11th ed. 2015) ("This [abuse and molestation exclusion] endorsement is utilized by underwriters in those instances where the possibility of abuse and molestation is relatively high, such as day care centers, pre-school institutions, juvenile centers, and municipalities"). Relying on the abuse and molestation

exclusion, insurers repeatedly and successfully have fended off claims from "medical or therapeutic care providers, health care centers, summer camps, schools and preschools, job training programs, churches, and the like" facing allegations of negligence in allowing those in their care, custody, or control to have been abused or molested. Valley Forge Ins. Co., supra at 98, and cases cited.

In sum, the origin of the abuse and molestation exclusion is particularly telling. In adopting this exclusion, insurers' "rationale was to shield themselves from liability for abuse or molestation claims where they unexpectedly could not rely upon the intentional acts exclusion to preclude coverage" due to theories by which these claims were brought as a result of the institutional nature in which they arose.[5] Krusell, 485 Mass. at 443.

c. Cases, statutes, and regulations. Our review of cases, statutes, and regulations in Krusell, 485 Mass. 443-446, also

---

[5] In Krusell, we also noted a second set of circumstances in which the abuse and molestation exclusion is often relied on by insurers due to the inadequacy of the intentional acts exclusion: specifically, "where a claim generally would be brought directly against an abuser, but the abuser is deemed incapable of intentional conduct by virtue of a mental disease or defect." Krusell, 485 Mass. at 441-442. "Even though, ordinarily, abuse is intentional conduct, in such a situation the abuser's inability to act with intent renders the intentional acts exclusion inapplicable." Id. at 442. Again, we do not address the applicability of the intentional acts exclusion to the conduct in this case. See note 2, supra.

demonstrated that an element of power was key to physical abuse. We specifically noted that cases where insurers successfully have relied on the abuse and molestation exclusion to exempt coverage for "'physical abuse' generally involve[d] more than mere physical harm."[6]  Id. at 443 & 445 n.23.  By contrast, cases where the exclusion did not exempt coverage distinguished violent conduct lacking an exploitation of power from "physical abuse."  Id. at 444.  See, e.g., Riley v. Maison Orleans II, Inc., 829 So. 2d 479, 491 (La. Ct. App. 2002) ("Physical abuse, as opposed to simple assault, is generally the act of a person

---

[6] Although, in Krusell, we relied on Merrimack Mut. Fire Ins. Co. v. Ramsey, 117 Conn. App. 769, 772-773 (2009), and Miglino v. Universal Prop. & Cas. Ins. Co., 174 So. 3d 479, 481-482 (Fla. Dist. Ct. App. 2015), as example cases where the conduct constituted "physical abuse" because the claims involved domestic violence, which we noted "often involves an imbalance of power," Krusell, 485 Mass. at 443-444, upon reflection, it is not clear that the conduct in those cases would fall within the interpretation we afford the term "physical abuse," as it is properly understood within the meaning of the abuse and molestation exclusion.  Rather, it appears that both jurisdictions interpret "physical abuse" more broadly than we do.  Indeed, we specifically recognized in Krusell, supra at 439, that, contrary to our interpretation of the term, the court in Miglino, supra at 481, considered "physical abuse" to be any "physical . . . maltreatment."  Further, in Merrimack Mut. Fire Ins. Co., supra at 773, the court's conclusion that the stabbing between romantic partners "clearly constituted physical abuse within the language of the policy" focused on the conduct involved, and not the imbalance of power.  And, as discussed infra, the Appellate Court of Connecticut later concluded in General Ins. Co. of Am. v. Okeke, 182 Conn. App. 83, 99, 101-103 (2018), that a fifteen year old's act of stabbing his elderly neighbor was "physical abuse" within the meaning of the abuse and molestation exclusion, treating Merrimack Mut. Fire Ins. Co., as dispositive.

in control, dominance, or authority who misuses his [or her] position to harm or mistreat a person over whom he [or she] exercises such control.  The act of one nursing home resident attacking a fellow resident is not abuse because the element of control is lacking").

To be sure, in a footnote in Krusell, we acknowledged a second line of "cases where insurers successfully relied upon an abuse and molestation exclusion" to preclude coverage based on "conduct that implies that the abuser is cruel or inhumane, that is, disposed to inflict pain or suffering."  Krusell, 485 Mass. at 444 n.22, citing Auto-Owners Ins. Co. v. American Cent. Ins. Co., 739 So. 2d 1078, 1080-1082 (Ala. 1999); General Ins. Co. of Am. v. Okeke, 182 Conn. App. 83, 101-103 (2018) (Okeke).  This footnote apparently led to our statement in dicta that a reasonable insured would interpret "physical abuse" to apply to a limited subset of physically harmful conduct, "such as . . . perhaps, conduct so extreme as to indicate an abuser's disposition towards inflicting pain and suffering" (emphasis added).  Krusell, supra at 446.

It is worthy of note, however, that in at least one of those cases, there was a discernible misuse of power in carrying out the "physical abuse."  In Auto-Owners Ins. Co., 739 So. 2d at 1080-1082, it was alleged that leaders of a fraternity forced a fraternity pledge to "dig a ditch and jump into it after it

had been filled with water, urine, feces, dinner leftovers, and vomit"; receive "paddlings to his buttocks"; be "pushed and kicked, often into walls, pits, and trash cans"; and "'run[] the gauntlet,' during which the pledges were pushed, kicked, and hit as they ran down a hallway and down a flight of stairs."  While an element of power was not as prominent in Okeke, 182 Conn. App. at 90, 100-101, where the conduct involved a fifteen year old insured attacking, beating, and stabbing his elderly female neighbor inside her residence, that court's interpretation of the term "physical abuse" expressly differs from our own. Contrary to our view, the court in Okeke concluded that the conduct there could not "plausibly be considered anything other than 'physical abuse,'" specifically rejecting the argument that the term "physical abuse," as used in an abuse and molestation exclusion, was ambiguous.  See id.

Statutes and regulations in the Commonwealth confirm that the term "physical abuse" implies an imbalance or misuse of power.  Our review of those sources in Krusell revealed that "[t]he term routinely has been applied to conduct causing harm to a vulnerable type of victim, where the alleged abuser may be responsible for the vulnerable individual's care."  Krusell, 485 Mass. at 445.  See, e.g., G. L. c. 265, § 13K (a 1/2) (abuse of elder); G. L. c. 265, § 23 (rape and abuse of child).  See also 103 Code Mass. Regs § 491.13 (2017) (grievance process for abuse

of inmates in correctional facility); 105 Code Mass. Regs § 155.003 (2017) (defining abuse of medical patients or residents in context of long-term care facilities); 118 Code Mass. Regs § 2.02 (2021) (defining abuse of persons with disabilities).

We therefore clarify that, for conduct to constitute "physical abuse" as a reasonable insured would understand the term when reading the language of the abuse and molestation exclusion and the policy as a whole, the conduct must involve an imbalance or misuse of power in addition to being physically harmful. Although we suggested in Krusell, 485 Mass. at 446, that perhaps there might be circumstances where the extremity of conduct may itself render physically harmful conduct "abusive," our examination of the policy language and other relevant sources leads us to conclude that a reasonable insured would interpret extreme physically harmful conduct to constitute "physical abuse" only where it also embraces a power component.

d. Application. Here, although Brengle's attack on Miville was unprovoked and inexplicable, it did not involve an exploitation or misuse of power. Dorchester Mutual's argument that, due to the thirty-one year age gap between Brengle and Miville and Miville's "advancing years," there was a physical power imbalance that rendered the attack "physical abuse" is unavailing. Indeed, a starker age gap existed in Krusell, where

the insured was twenty-three years old and the victim was sixty-two years old, and we had little trouble concluding that no "'abusive' quality" such as a "misuse of power" existed. Krusell, 485 Mass. at 433, 446.  As a result, a reasonable insured would not expect the abuse and molestation exclusion to preclude coverage for the incident here.

Conclusion.  The summary judgment in favor of Dorchester Mutual is reversed, and the matter is remanded for further proceedings consistent with this opinion.

So ordered.