# Third District Court of Appeal

## State of Florida

Opinion filed June 18, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1860
Lower Tribunal No. 22-602
_____

**Catalina West Homeowners Association, Inc.,**
Appellant,

vs.

**First Community Insurance Company, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Gina Beovides, Judge.

Easley Appellate Practice, PLLC, and Dorothy F. Easley; and Graham Legal, P.A., and Dillon Graham, III, for appellant.

Dinsmore & Shohl, LLP, and Kathryn L. Ender and Janice Lopez, for appellee, First Community Insurance Company.

Before FERNANDEZ, BOKOR and GOODEN, JJ.

GOODEN, J.

Appellant Catalina West Homeowners Association, Inc. appeals a final declaratory judgment in favor of Appellee First Community Insurance Company finding that First Community does not have a duty to defend or indemnify. Because we find that the plain and unambiguous terms of the insurance policy do not provide insurance coverage for this incident, we affirm in all respects.

## I.

On November 5, 2019, Daniel Macko was ambushed and shot by unknown assailants at his home located in the Catalina West development in Cutler Bay, Florida. The assailants gained unrestricted access to the development. As a result of his injuries, Macko tragically passed away.

The Personal Representative of the Estate of Daniel Macko filed suit against Catalina West and others for negligent maintenance and security. First Community Insurance Company issued a businessowners policy to Catalina West for the pertinent policy period. It provided a defense to Catalina West under a reservation of rights. The relevant terms of the policy are:

**BUSINESSOWNERS COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

2

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph C. Who is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph H. Property Definitions in Section I – Property and Paragraph F. Liability and Medical Expenses Definitions in Section II – Liability.

. . .

**SECTION II – LIABILITY**

**1.      Business Liability**

      a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising insured" to which this insurance applies. We will have the right and duty to defend the insured any "suit" seeking those damages. However, we will have not duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising insured", to which this insurance does not apply. . . .

. . .

      b.    This insurance applies:

          (1)    To "bodily injury" or "property damage" only if:
               (a)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

3

> > (b) The "bodily injury" or "property damage" occurs during the policy period; and

. . .

**B. Exclusions**

**1.    Applicable to Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

**r.  Criminal Acts**
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

. . .

**F.    Liability And Medical Expenses Definitions**

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

An endorsement modified the policy and added a "Physical and Sexual Abuse Exclusion." It reads:

This endorsement modified insurance provided under the following:

4

**BUSINESSOWNERS COVERAGE FORM**

The following is added to **SECTION II—LIABILITY, B. Exclusions**:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", medical payments or any other damages directly or indirectly because of, arising out of, related to or in any other way connected to actual, threatened or attempted:

    **a.**    Physical abuse, physical molestation, habitual neglect; or

    **b.**    Sexual abuse, sexual assault, sexual battery, sexual molestation; or

    **c.**    Licentious, amoral, immoral or similar behavior;

that was committed or alleged to have been committed by the insured, their "employees", any person acting on behalf of the insured, customers, patrons, guests or any other person on the insured's premises.

This exclusion applies to all causes of action arising out of any of the acts enumerated above, including but not limited to:

    a.    Allegations of negligent hiring, placement or training of employees;

    b.    Improper or non-existent supervision of employees, patrons or guests;

    c.    Negligence in failing to protect customers, patrons or guests;

    d.    Error or omissions relating to any of the above mentioned acts.

In addition, this exclusion applies regardless of whether the acts enumerated above were committed intentionally, negligently, inadvertently, or with the belief, erroneous or otherwise, that the other party consented and had the legal and mental capacity to consent thereto.

This exclusion applies regardless of whether or not the insured, their "employees", any person acting on behalf of insured, customers, patrons or guests, are actually charged with or convicted of a crime.

First Community Insurance Company subsequently filed a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify. It maintained its policy did not provide insurance coverage for the incident, and relied on the Physical and Sexual Abuse Exclusion. Catalina West denied the allegations.

First Community Insurance Company moved for summary judgment. In support, it cited Miglino v. Universal Property & Casualty Insurance Co., 174 So. 3d 479 (Fla. 4th DCA 2015)—a case interpreting a similar exclusion. Catalina West countered that physical abuse is a compound word, and therefore, has a unique meaning. It maintained that it is abuse between domestic partners or those with a trust relationship and there was no such relationship between Macko and the assailants. It distinguished Miglino as only involving family members.

After hearing from the parties, the trial court granted the motion finding that First Community Insurance Company does not have a duty to defend or indemnify Catalina West. Declining to adopt a novel definition of physical abuse, it explained that "[t]here is nothing in the Miglino decision to suggest

6

that the <u>Miglino</u> court's definition of 'physical abuse' was situational and/or that a new definition should be supplied depending on the facts of the case." As a result, it entered final summary judgment in favor of First Community Insurance Company. This appeal followed.

**II.**

Interpretation of an insurance policy is a question of law. Our review is de novo. <u>Penzer v. Transp. Ins. Co.</u>, 29 So. 3d 1000, 1005 (Fla. 2010).

**III.**

**A.     Duty to Defend and Duty to Indemnify**

An insurance company's duty to defend is distinct from and broader than its duty to indemnify. "The allegations of the complaint govern the duty of the insurer to defend." <u>Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.</u>, 358 So. 2d 533, 536 (Fla. 1977). "The question of duty to defend is answered based upon a review of the underlying pleadings filed against the insured as well as the insurance policy itself." <u>Nationwide Mut. Fire Ins. Co. v. Advanced Cooling & Heating, Inc.</u>, 126 So. 3d 385, 387 (Fla. 4th DCA 2013). If the allegations fairly bring the case within the terms of the policy, the duty to defend the underlying lawsuit arises. <u>Id.</u> at 388. However, if the allegations do not fall within the insuring agreement or fall within an exclusion, the duty to defend never arises. <u>See</u> <u>Reliance Ins. Co. v. Royal</u>

7

Motorcar Corp., 534 So. 2d 922, 923 (Fla. 4th DCA 1988) ("There is no obligation on an insurer to defend an action against its insured when the pleading in question shows the applicability of a policy exclusion."); Fed. Ins. Co. v. Applestein, 377 So. 2d 229, 231 (Fla. 3d DCA 1979) ("No obligation to defend the action, much less to pay any resulting judgment, arises when the pleading in question shows either the non-existence of coverage or the applicability of a policy exclusion.").

The duty to indemnify is determined by looking beyond the underlying complaint. It is governed by the facts of the case. Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996). Courts analyze the terms of the policy in light of those facts. Alicea Enters., Inc. v. Nationwide Ins. Co. of Am., Inc., 252 So. 3d 799, 802 (Fla. 2d DCA 2018).

If the duty to defend does not exist, then the duty to indemnify likewise does not exist. See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co., 16 So. 3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend."); Applestein, 377 So. 2d at 233 ("It has thus been uniformly held that a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be entered upon that claim.").

8

With these principles in mind, we turn to the text of the insurance policy.

## B.     The Plain Language of the Insurance Policy

"The scope and extent of insurance coverage is determined by the language of the insurance policy. Thus, the policy's text is paramount and must be the starting point of our analysis." Fojon v. Ascendant Comm. Ins. Co., 393 So. 3d 806, 810 (Fla. 3d DCA 2024). See also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012). This is an objective pursuit, not subjective. Advisory Op. to Governor re Implementation of Amend. 4, The Voting Restoration Amend., 288 So. 3d 1070, 1078 (Fla. 2020).

We construe those words according to their plain meaning and view them in context of the policy as a whole. § 627.419(1), Fla. Stat. (2019) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto."); Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003) ("[W]hen analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others."); Scalia & Garner, supra, at 167 ("Context is a primary determinant of meaning. A legal

9

instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts."). "Every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible." Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979). See also Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) ("[C]ourts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.").

The policy provides liability coverage for "bodily injury" or "property damage" caused by an "occurrence." But it does not provide liability coverage for "actual, threatened or attempted" "physical abuse, physical molestation, habitual neglect," "sexual abuse, sexual assault, sexual battery, sexual molestation," or "licentious, amoral, immoral or similar behavior."

The parties concentrate on the words "physical abuse." Focusing on the fact that the words are undefined, Catalina West maintains that the term is ambiguous and must be construed against the insurer. It advocates for a narrow, and somewhat novel, definition—limited to harm occurring in a domestic, authority, or trust relationship only.

Yet a term is only ambiguous when it is of uncertain meaning, may be fairly understood in more ways than one, and is susceptible of interpretation

10

in opposite ways. Friedman v. Virginia Metal Prods. Corp., 56 So. 2d 515, 517 (Fla. 1952); Barnett v. Destiny Owners Ass'n, Inc., 856 So. 2d 1090, 1092 (Fla. 1st DCA 2003). "A true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible." Am. Med. Int'l, Inc. v. Scheller, 462 So. 2d 1, 7 (Fla. 4th DCA 1984). Likewise, a term is not ambiguous simply because it is not defined, or it is complex and requires analysis. See Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007); State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998). Plus, ambiguity cannot be created by adding context or words that are not within the policy. See U.S. Fire Ins. Co. v. Morejon, 338 So. 2d 223, 225 (Fla. 3d DCA 1976) ("Florida courts adhere to the principle that a court should not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract.").

Focusing on the plain meaning of the words before us, we turn to dictionaries from the time the contract arose. "Dictionaries aid us in establishing the publicly understood plain meaning of a word whose relevant definition is contested, and we look to them when a contractual term is undefined within a contract." Parrish v. State Farm Fla. Ins. Co., 356 So. 3d

771, 776 (Fla. 2023). The word "physical" means "[o]f, relating to, or involving someone's body as opposed to mind" or "[o]f, relating to, or involving rough or violent contact." Black's Law Dictionary 1386 (11th ed. 2019). See also Webster's New World College Dictionary 1101 (5th ed. 2018) (defining as "of the body as opposed to the mind" or "of or marked by aggressive or rough play, activity"). The noun "abuse" means "[a] departure from legal or reasonable use; misuse," or "[c]ruel or violent treatment of someone; specif., physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." Black's Law Dictionary 12 (11th ed. 2019). See also Webster's New World College Dictionary 6 (5th ed. 2018) (defining as "wrong, bad, or excessive use," or "mistreatment, esp. by the infliction of physical, sexual, or psychological harm; injury."). "Abuse" is also a verb. The verb is defined as "to damage (a thing)," [t]o depart from legal or reasonable use in dealing with (a person or thing)," "[t]o injure (a person) physically or mentally." Black's Law Dictionary 13 (11th ed. 2019). See also Webster's New World College Dictionary 6 (5th ed. 2018) (defining as "to use wrongly; misuse," "to hurt by treating badly; mistreat" or "to inflict physical, sexual, or psychological harm upon.").

Notably, neither dictionary defines "physical abuse" as a single or compound term. This is important since other commonly identified types of

abuse are defined—child abuse, elder abuse, domestic abuse, emotional abuse, sexual abuse, and verbal abuse. Black's Law Dictionary 12 (11th ed. 2019). In other words, there are no special definitions attributed to "physical abuse." And importantly, neither dictionary limits their definitions to familial, trust, or authority relationships. Abuse is broader in context.

We find the words "physical abuse" are not ambiguous. The exclusion precludes liability coverage for "bodily injury" "arising out of, related to or in any other way connected to actual, threatened or attempted physical abuse." When the ordinary meaning of each word is considered in context of the exclusion, there is no coverage where someone—such as the insured, their employees, guests, or any other person on the insured's premises—actually, attempts, or threatens cruel and violent treatment to another person's body resulting in physical injury. An ambush and fatal shooting plainly fall within that. Accord Miglino, 174 So. 3d at 481. The assailant's cruel and violent actions inflicted physical injury to Macko.

When viewing the policy as a whole, this interpretation of the Physical and Sexual Abuse Exclusion is in harmony with the remainder of the policy. See Scalia & Garner, supra, 180 ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). This commercial general liability policy does not insure intentional, criminal acts

13

where injury is intended or expected. For instance, the insuring agreement provides liability coverage for bodily injuries caused by an "occurrence." See Koikos v. Travelers Ins. Co., 849 So. 2d 263, 271 (Fla. 2003) ("The insured's alleged negligence is not the 'occurrence'; the insured's alleged negligence is the basis upon which the insured is being sued by the injured party. Focusing on the immediate cause-that is the act that causes the damage-rather than the underlying tort-that is the insured's negligence-is also consistent with the interpretation of other forms of insurance policies."); Phillips v. Ostrer, 481 So. 2d 1241, 1247 (Fla. 3d DCA 1985) ("The act which causes the damage constitutes the occurrence."). "Occurrence" is defined as an "accident." "Accident" generally means unexpected or unintended. Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp., 636 So. 2d 700, 704 (Fla. 1993). Thus, only unexpected or unintended acts—in other words, negligent acts or omissions—fall within the insuring agreement. Fojon, 393 So. 3d at 810 ("An insuring agreement contains the grant of coverage. It generally describes what is covered by the policy and under what circumstances. If the elements set forth in the insuring agreement are not satisfied, the policy does not provide insurance coverage.").

Likewise, the policy excludes liability coverage for expected or intended injuries and criminal acts. See Cabezas ex rel. Ferrer v. Fla. Farm

14

Bureau Cas. Ins. Co., 830 So. 2d 156, 158 (Fla. 3d DCA 2002); Aetna Cas. & Sur. Co., Inc. v. Miller, 550 So. 2d 29, 30 (Fla. 3d DCA 1989); State Auto Mut. Ins. Co. v. Scroggins, 529 So. 2d 1194, 1195 (Fla. 5th DCA 1988); Hartford Fire Ins. Co. v. Spreen, 343 So. 2d 649, 652 (Fla. 3d DCA 1977). It similarly excludes act of terrorism, insurrection or rebellion, and theft.

At bottom, Catalina West's proposed definition is simply not in harmony with the remainder of the policy.[1] Indeed, limiting the exclusion to those in domestic, trust, or authority relationships is not logical in this framework. It asks too much from the text. Scalia & Garner, supra, 31 ("A fundamental rule of textual interpretation is that neither a word nor a sentence may be given a meaning that it cannot bear.").

Furthermore, its proposed definition adds context and meaning that is not within the text of the policy. It would require us to add words—trust, domestic, familial, or authority relationship—to limit it in that manner. We do not have the authority to rewrite the policy. Excelsior Ins. Co., 369 So. 2d at 942; Fojon, 393 So. 3d at 810–11 ("The policy must be enforced as written. Courts are without power to rewrite insurance contracts or create insurance

---

[1] The dissent's focus on the policy not containing an assault and battery exclusion is misguided for this very reason. It ignores that intentional acts, such as this, already fall outside of the scope of coverage. An assault and battery exclusion would have been superfluous.

15

coverage where none exists."); <u>Morejon</u>, 338 So. 2d at 225 ("Florida courts adhere to the principle that a court should not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract."); <u>Pastori v. Com. Union Ins. Co.</u>, 473 So. 2d 40, 41 (Fla. 3d DCA 1985) ("[C]ourts have no power simply to create coverage out of the whole cloth when none exists on the face of an insurance contract . . . ."). This makes it an unreasonable interpretation. <u>Allstate Life Ins. Co. v. Fox</u>, 700 So. 2d 49, 50 (Fla. 5th DCA 1997) ("This interpretation should be discarded because it is not a reasonable one.").

Accordingly, we find that the words "physical abuse" are not ambiguous. The allegations of the underlying complaint squarely fall within their ordinary and common definitions—where someone actually, attempts or threatens cruel and violent treatment to another person's body resulting in physical injury. First Community Insurance Company does not have a duty to defend or indemnify. And so, the trial court correctly entered final summary judgment.

Despite the dissent's sweeping claims otherwise, numerous jurisdictions have interpreted the exclusion in the manner that we have—by applying the plain language of the policy. <u>See, e.g.</u>, <u>Metro. Prop. & Cas. Ins. Co. v. McCarthy</u>, 327 A.3d 1134, 1139 (Me. 2024) (applying plain language

16

of exclusion to preclude coverage for abuse); Rosenberg v. Hudson Ins. Co., 638 F. Supp. 3d 510, 523 (W.D. Pa. 2022), aff'd, No. 22-3275, 2025 WL 457306 (3d Cir. Feb. 11, 2025) (holding shooting murder constituted abuse within the plain meaning of the policy); Hecht v. Great N. Ins. Co., 769 Fed. App'x 562, 568 (10th Cir. 2019) (finding "Hecht falsely imprisoned Warfel at an isolated cabin, where he lost his temper and threatened to kill her mother, cut off her finger, and knock her teeth out" constituted abuse as set forth by the exclusion); Safeco Ins. Co. of Am. v. Laubinger, No. 4:18CV1237 HEA, 2019 WL 1773146, at *5 (E.D. Mo. Apr. 23, 2019) (applying plain language to find abuse where perpetrator restrained, beat, tased, and threatened to kill victim); Gen. Ins. Co. of Am. v. Okeke, 189 A.3d 158, 169 (Conn. App. Ct. 2018) ("The violent stabbing and beating of Craft cannot plausibly be considered anything other than 'physical abuse.'"); Universal N. Am. Ins. Co. v. Colosi, 322 F. Supp. 3d 1071, 1077 (D. Nev. 2018) (holding act of burning another's body with lighter fell within plain meaning of physical abuse); U.S. Underwriters Ins. Co. v. Hands of Our Future, LLC, C.A. No. N14C-10-175 CEB, 2016 WL 4502003, at *3 (Del. Super. Ct. Aug. 19, 2016) ("Reading all contractual terms to have meaning, where sexual mistreatment is covered by the term 'molestation,' the only reasonable meaning of the term 'abuse' in the context of the Molestation or Abuse Exclusion must be one that includes

17

physically or verbally harmful conduct."); Miglino, 174 So. 3d at 481 ("The plain meaning of 'physical abuse' encompasses the intentional shooting of Miglino by the sister."); Maxum Indem. Co. v. I.T.A. Sec. Servs., Inc., No. 14cv-21437, 2014 WL 12862522, at *4 (S.D. Fla. July 24, 2014), report and recommendation adopted, No. 14-21437-CIV, 2014 WL 12862523 (S.D. Fla. Aug. 18, 2014) (applying Florida law) (holding employee placing a person in chokehold fell within plain meaning of Physical and Sexual Abuse exclusion); Farmers Auto. Ins. Ass'n v. Long, No. 1:13-cv-01236, 2014 WL 1665001, at *6 (E.D. Cal. Apr. 23, 2014), report and recommendation adopted, No. 1:13-cv-01236, 2014 WL 12773793 (E.D. Cal. June 5, 2014) (holding fraternity hazing constituted abuse and fell within plain language of exclusion); Acadia Ins. Co. v. Hinds Cnty. Sch. Dist., No. 3:12-CV-188-CWR-LRA, 2013 WL 12091099, at *4 (S.D. Miss. Mar. 29, 2013) (allegation that teacher sprayed child with Aerosol can and hit him in face with ball constituted abuse within exclusion); Nat'l Mut. Fire Ins. Co. v. Frye, No. 1:11cv1135, 2013 WL 6234612, at *6 (M.D.N.C. Dec. 2, 2013) (throwing toddler against wooden chair constituted physical abuse within plain meaning of exclusion); Scottsdale Ins. Co. v. Children's Home Soc'y of N.C., Inc., No. 5:12-CV-81-FL, 2013 WL 3354506, at *7 (E.D.N.C. July 3, 2013), aff'd, 581 Fed. App'x 290 (4th Cir. 2014) (holding allegations of false imprisonment constituted

physical abuse within the plain meaning of term); Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc., 450 Fed. App'x 792, 793 (11th Cir. 2011) (applying Florida law) (affirming lower court's finding that acts of tormenting, such as taping mouth shut, locking in bathroom, telling person his mother has breast cancer, and threatening with violence and death, constituted physical abuse); Merrimack Mut. Fire Ins. Co. v. Ramsey, 982 A.2d 195, 198 (Conn. App. Ct. 2009) ("The stabbing of the defendant clearly constituted physical abuse within the language of the policy. As such, the injuries suffered by the defendant are not covered, and the plaintiff has no duty to defend or to indemnify Jeffrey Ramsey."); Sarah G. v. Maine Bonding & Cas. Co., 866 A.2d 835, 839 (Me. 2005) (paying minors to pose for illicit photographs constituted abuse); S.C. Farm Bureau Mut. Ins. Co. v. Oates, 588 S.E.2d 643, 646 (S.C. Ct. App. 2003) ("When the allegations supporting liability in the underlying negligence action are viewed under any of the above-stated definitions of abuse, Jonathan's injuries arose out of abuse as that term is used in its plain, ordinary, and popular sense."); Auto-Owners Ins. Co. v. Am. Cent. Ins. Co., 739 So. 2d 1078, 1081 (Ala. 1999) (applying plain meaning of physical and mental abuse to preclude coverage for acts of hazing); Am. Fam. Mut. Ins. Co. v. Chiczewski, 700 N.E.2d 777, 778 (Ill. App. Ct. 1998) (applying plain language of physical abuse to preclude allegations

of harm to a minor after ingesting illegal drugs); <u>New World Frontier, Inc. v. Mount Vernon Fire Ins. Co.</u>, 253 A.D.2d 455, 455 (N.Y.S. 2d 1998) (holding where four-year was assaulted, battered, and sexually molested by a five year old fell within plain meaning of exclusion); <u>CNA Int'l Reinsurance Co. v. CPB Enters., Inc.</u>, 982 F. Supp. 831, 834 (S.D. Ala. 1997) (finding assault and battery fell within plain meaning of abuse); <u>McAuliffe v. N. Ins. Co. of N.Y.</u>, 69 F.3d 277, 279 (8th Cir. 1995) ("Lahr's manipulative and sexually opportunistic conduct was abusive within the exclusion's plain meaning."); <u>Mount Vernon Fire Ins. Co. v. Hicks</u>, 871 F. Supp. 947, 952 (E.D. Mich. 1994) (holding assault and death fell within plain meaning of abuse).

## C.    The Doctrine of Reasonable Expectations

Catalina West and the dissent both frame their analysis from the insured's perspective—what would a reasonable insured have reasonably believed was covered under the policy.  This is called the doctrine of reasonable expectations.

"Under this doctrine, the insured's expectations as to the scope of coverage is upheld provided that such expectations are objectively reasonable." <u>Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.</u>, 711 So. 2d 1135, 1140 (Fla. 1998).  The insured is entitled to all the coverage

20

he or she may have reasonably expected—without due regard to the actual language provided by that policy or the risk underwritten.

But the Florida Supreme Court has **repeatedly** rejected this doctrine in the interpretation of insurance policies.  See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So. 3d 541, 549 (Fla. 2012); Deni Assocs. of Florida, Inc., 711 So. 2d at 1140.  See also Citizens Prop. Ins. Corp. v. Manor House, LLC, 313 So. 3d 579, 583 (Fla. 2021).  Instead, Florida courts must focus on the plain language of the insurance policy and give effect to those express terms.  See Lenhart v. Federated Nat'l Ins. Co., 950 So. 2d 454, 461 (Fla. 4th DCA 2007) (explaining that a reasonable belief contrary to the plain meaning of insurance policy, or even to unclear text capable of being fairly read to provide coverage, is irrelevant to interpretation of the policy); State Farm Fire & Cas. Co. v. Castillo, 829 So. 2d 242, 247 (Fla. 3d DCA 2002) (explaining that "it is the policy's terms which define coverage, not the insured's reasonable expectations").  The parties' unexpressed intent or desires have no effect.  We strongly reject any attempts to revive this doctrine or fundamentally change how Florida courts interpret insurance policies.

The dissent relies upon cases that readily employ this doctrine.  See, e.g., Dorchester Mut. Ins. Co. v. Krusell, 150 N.E.3d 731, 738 (Mass. 2020)

21

("When in doubt as to the proper meaning of a term in an insurance policy, we consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.") (internal citations omitted); Dorchester Mut. Ins. Co. v. Miville, 204 N.E.3d 382, 391 (Mass. 2023) ("We therefore clarify that, for conduct to constitute 'physical abuse' as a reasonable insured would understand the term when reading the language of the abuse and molestation exclusion and the policy as a whole, the conduct must involve an imbalance or misuse of power in addition to being physically harmful."); Powers v. Certain Underwriters at Lloyd's London, 2024 WL 3971137, at *4-5 (D. Nev. Aug. 26, 2024) ("The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted. . . . [W]e must interpret the provision to effectuate the insured's reasonable expectations[.]"); Lexington Ins. Co. v. New Mexico Ass'n of Cntys., Civ. No. 07-464 RB/LAM, 2010 WL 11597831, at *4 (D.N.M. June 28, 2010) ("[W]e must now determine whether the exclusionary clause in the case at hand is ambiguous or irreconcilably conflicts with other parts of the agreement contrary to New Mexico's strong policy of promoting the reasonable expectations of the insured.").[2] Florida

---

[2] The dissent further relies on Riley v. Maison Orleans II, Inc., 829 So. 2d 479 (La. Ct. App. 2002), Kemper Independence Ins. Co. v. Tarzia, No. 3:11-cv-00318, 2012 WL 6568776 (U.S. Dist. Ct. D. Conn. June 19, 2012), and

courts should reject these cases. They have no place in our textualist analysis.

## D. The Policy is Not Illusory

Catalina West and the dissent both frame the policy as illusory. They assert that the exclusion acts to exclude all conduct that causes harm. Not so. "A policy is illusory only if there is an internal contradiction that completely negates the coverage it expresses to provide." Warwick Corp. v. Turetsky, 227 So. 3d 621, 625 (Fla. 4th DCA 2017). "On the other hand, where a limitation on coverage does not 'completely swallow' the insuring provision, the policy is not illusory." Id. (citation modified).

As set forth above, the Physical and Sexual Abuse Exclusion is in harmony with the remainder of the policy. The insuring agreement covers "occurrences"—incidents that are "accidents." It simply does not cover intentional conduct. See, e.g., Prasad v. Allstate Ins. Co., 644 So. 2d 992, 992 (Fla. 1994). The policy plainly provides coverage for bodily injury that

---

Quincy Mut. Fire Ins. Co. v. Kim, No. 1483CV00847, 2015 WL 13574071 (Mass. Super. 2015). Louisiana, Connecticut, and Massachusetts likewise follow the doctrine of reasonable expectations. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 764 (La. 1994) ("In insurance parlance, this is labelled the reasonable expectations doctrine."); R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co., 216 A.3d 629, 641 (Conn. 2019) ("[T]he determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive . . . ."); Krusell, 150 N.E.3d at 738.

arises from negligent conduct that does not fall within this exclusion—where someone does <u>not</u> actually threaten or attempt cruel and violent treatment to another person's body to cause physical injury. This could include numerous incidents, such as someone slipping and falling on the insured's property, a car accident occurring because the shrubs were too high at the entrance, or an unattended child drowning in the community pool. The policy is not illusory in any manner.

## IV.

There is no basis in law or fact for this Court to rewrite the insurance contract in the manner advocated by Catalina West. The policy is unambiguous. It excludes "physical abuse," which is where someone actually, attempts, or threatens cruel and violent treatment to another person's body resulting in physical injury. An ambush and shooting squarely qualify. Thus, First Community Insurance Company does not have a duty to defend or indemnify. Summary judgment was proper. For these reasons, we affirm.

Affirmed.

BOKOR, J., concurs.

FERNANDEZ, J., dissenting.

I dissent from the majority opinion because I conclude that the term "physical abuse," as it appears in the insurance policy in question, is ambiguous at best. Thus, I believe the trial court erred in adopting Miglino v. Universal Property and Casualty Insurance Company, 174 So. 3d 479 (Fla. 4th DCA 2015), which is factually distinguishable from the case before us. I would hold that a "physical abuse" exclusion that appears in a "Physical and Sexual Abuse" exclusion clause, such as the one in this case, does not include a single act of violence such as the ambush and shooting by an unknown assailant who has no relationship to the victim. Accordingly, I respectfully dissent.

Catalina West operates, manages, and maintains the Catalina West housing community in Cutler Bay, Florida. First Community issued a business owners' policy of insurance to Catalina West for the period from May 28, 2019 through May 28, 2020. The policy insured Catalina West for bodily injury claims and included liability coverage of $2,000,000.00 per occurrence with a $4,000,000.00 aggregate. Catalina West purchased the policy to protect itself from all liability from the management, operation, maintenance, and security of the homeowners' association ("HOA") property, including bodily injury claims.

On November 5, 2019, Daniel Macko was at his home within the Catalina West community when he was shot and killed by unknown assailants. His estate sued Catalina West, Old Cutler Lakes by the Bay Community Association, Inc., and South Florida Security Group, Inc. ("SFSG") in Miami-Dade Circuit Court for negligent maintenance and security. Macko's estate alleged that he was murdered by unknown assailants and that Catalina West was negligent in failing to warn, protect, guard, and secure the safety of the residents from criminal acts.

The insurer, First Community, originally agreed in November 2020 to defend Catalina West in the estate's wrongful death action under a reservation of rights. In January 2022, First Community filed the underlying declaratory judgment action to determine its responsibilities under the insurance policy.

In July 2022, First Community filed an amended complaint for declaratory judgment and demand for a jury trial. First Community alleged that it had no duty to defend or indemnify Catalina West because the policy contained a "Physical and Sexual Abuse Exclusion." Regarding this exclusion, the policy stated:

**PHYSICAL AND SEXUAL ABUSE EXCLUSION**

. . .

26

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", medical payments or any other damages directly or indirectly because of, arising out of, related to or in any other way connected to actual, threatened or attempted:

a.      physical abuse, physical molestation, habitual neglect; or
b.      sexual abuse, sexual assault, sexual battery, sexual molestation; or
c.      licentious, amoral, immoral or similar behavior;

that was committed or alleged to have been committed by the insured, their "employees", any person acting on behalf of the insured, customers, patrons, guests or any other person on the insured's premises.

This exclusion applies to all causes of action arising out of any of the acts enumerated above, including but not limited to:

a.      allegations of negligent hiring, placement or training of employees;
b.      improper or non-existent supervision of employees, patrons or guests;
c.      negligence in failing to protect customers, patrons or guests.
d.      error or omissions relating to any of the above mentioned acts.

In addition, this exclusion applies regardless of whether the acts enumerated above were committed intentionally, negligently, inadvertently, or with the belief, erroneous or otherwise, that the other party consented and had the legal and mental capacity to consent thereto.

This exclusion applies regardless of whether or not the insured, their "employees", any person acting on behalf of insured, customers, patrons or guests, are actually charged with or convicted of a crime.

27

First Community moved for final summary judgment, contending that Catalina West was not entitled to its defense or indemnity under the policy's exclusion of claims "arising from physical and sexual assault." SFSG and Old Cuter Lakes by the Bay each filed their Response in Opposition to First Community's motion for final summary judgment, contending that a genuine issue of material fact existed regarding whether the exclusion applied and that to the extent there was an ambiguity, it must be construed against First Community. Thereafter, Catalina West filed its Response in Opposition to First Community's motion for final summary judgment, adopting and incorporating the arguments made by SFSG and Old Cutler Lakes by the Bay Community Association.

The trial court held a hearing on First Community's motion. First Community argued that it read the policy exclusion to include "simple assaults and batteries and shooting claims," relying on Miglino. Catalina West contended, in part, that the plain meaning of the physical abuse exclusion did not include a single act of violence by a stranger, still unknown, to ambush and murder the deceased, Macko. Catalina West distinguished Miglino because that case involved family members who knew each other, there was an ongoing dispute, it involved a homeowner's insurance policy

28

as opposed to a commercial policy, and it involved a shooting that occurred away from the insured's home.

The trial court granted First Community's summary judgment motion. The trial court applied the Miglino definition of "physical abuse" to be any act of any kind constituting "physical . . . maltreatment," "physical injury," and "hurt or injur[y] by maltreatment" to conclude that Macko's ambush and murder by the unknown assailants fell within the definition of "physical abuse." Miglino, 174 So. 3d at 481. The trial court stated in its Final Judgment that because the wrongful death suit alleged "bodily injury" from an ambush resulting in death, it thus "relates to or pertains to the body" and thus asserts "hurt or injury by maltreatment" under the broad reading contemplated in Miglino. Thus, the trial court found that First Community had no obligation to defend or indemnify Catalina West in the wrongful death action.

On appeal, Catalina West asserts that the trial court erred in entering summary declaratory judgment for First Community because a reasonable insured, as courts across the country have found, would reasonably read the language of the physical and sexual abuse exclusion at issue to require something more. This something more includes harm done while exploiting a relationship with the victim, and thus the exclusion is inapplicable to an

29

assault by an unknown assailant having no relationship or association to the victim. I agree with this position and thus would hold that the trial court erred in following the Fourth District Court of Appeal's opinion in Miglino.

An appellate court reviews insurance policy construction under a *de novo* standard of review. Gov't Employees Ins. Co. v. Macedo, 228 So. 3d 1111, 1113 (Fla. 2017); Volusia Cnty., v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). The Court must draw every possible inference in favor of the insured. Gonzalez v. B&B Cash Grocery Stores, Inc., 692 So. 2d 297, 299 (Fla. 4th DCA 1997).

In Florida, an insurer has an obligation to defend when the allegations of the underlying complaint bring the insured within the policy provisions of coverage. Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 10-11 (Fla. 2005). Thus, when an action "is filed against an insured, there generally is no need for a declaratory action in respect to the insurer's obligation to defend." Id. at 10. "Any doubts regarding the duty to defend must be resolved in favor of the insured" to find coverage. Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 443 (Fla. 2005). "If the complaint alleges facts that are partially within and partially outside the policy, the insurer is obligated to defend the entire suit." Colony Ins. Co. v. G & E Tires & Serv., Inc., 777 So.

30

2d 1034, 1037 (Fla. 1st DCA 2000) (quoting Grissom v. Commercial Union Ins. Co, 610 So. 2d 1299, 1306-07 (Fla. 1st DCA 1992).

Florida law requires that insurance policies are construed liberally and in favor of coverage for the insureds and must be construed strictly against the insurance company. Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828, 830 (Fla. 1997). Further, whereas coverage clauses are afforded the broadest interpretation so as to effectuate the greatest extent of coverage possible, exclusionary clauses must be strictly and narrowly construed. Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So. 2d 528, 533 (Fla. 2005). Ambiguous exclusionary clauses are construed even more strictly against the insurer than ambiguous coverage clauses. Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).

"[W]here policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998). Moreover, "exclusionary clauses in liability insurance policies are always strictly construed." Westmoreland v. Lumbermens Mut. Cas. Co., 704 So. 2d 176, 179 (Fla. 4th DCA 1997). "In construing exclusions in an insurance contract, the entire contract must be construed as a whole, from the perspective of an ordinary person." Mactown, Inc. v. Continental

31

Ins. Co., 716 So. 2d 289, 291-92 (Fla. 3d DCA 1998) (internal citations omitted). "[I]f an exclusionary clause . . . has not been stated with sufficient clarity, then the rule of strict construction requires a construction in favor of the insured." Westmoreland, 704 So. 2d at 180.

Lastly, "[a]n insured's duty to indemnify is 'determined by analyzing the policy coverage in light of the actual facts in the underlying case.'" Alicea Enters., Inc. v. Nationwide Ins. Co. of Am., Inc., 252 So. 3d 799, 802 (Fla. 2d DCA 2018) (citation omitted). "The duty to indemnify is thus often dependent upon further factual development through discovery or at trial." Khatib v. Old Dominion Ins. Co., 153 So. 3d 943, 947-48 (Fla. 1st DCA 2014) (holding that the decision of the trial court exonerating an insurer from its duty to defend and indemnify, before the facts were adduced, was premature and thus was reversible error).

Once the insured establishes a loss apparent within the terms of an insurance policy, the burden shifts to the insurer to prove that the claim is excluded from coverage under an applicable exception or exclusion. Deshazior v. Safepoint Ins. Co., 305 So. 3d 752, 754-55 (Fla. 3d DCA 2020). An insurer bears the heavy burden of proving its construction is the only reasonable construction of the policy. See Nixon, 290 So. 2d at 29-30; Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1086 (Fla. 2005). Even if the

32

insurer's interpretation of the policy is arguably "reasonable," if there are two such reasonable interpretations, the policyholder's interpretation in favor of coverage must be adopted. Fayad; see also Taurus Holdings, Inc., 913 So. 2d 528.

In the matter before this Court, the issue concerns whether, under this business owner's liability insurance policy, the term "physical abuse" in the "Physical and Sexual Abuse Exclusion" portion of the policy excludes coverage for Catalina West's negligence. First Community submitted the Miglino case to the trial court, the only Florida state court case addressing this issue, and the trial court agreed with the Miglino court's definition of "physical abuse," that it includes **any** form of physical harm.

In Miglino, the insured loaned a gun to his sister. Miglino, 174 So. 3d at 480. The insured's sister then shot her son-in-law with the gun. Id. The son-in-law was in the midst of divorce proceedings with the insured's sister's daughter. Id. The sister was not on the insured premises when she shot her son-in-law. Id.

Thereafter, the son-in-law sued the insured and the insured's sister. Id. The son-in-law claimed that the sister intentionally shot him and alleged a negligent entrustment claim against the insured. Id. After initially defending the insured in the son-in-law's action, the insurer then filed a declaratory

33

action seeking a declaration that it had no duty to defend or indemnify the insured under the policy's abuse and molestation exclusion, which "exclude[d] payments for damages '[a]rising out of sexual molestation, corporal punishment or physical or mental abuse.'" Id. The trial court granted summary judgment for the insurer. Id.

The son-in-law appealed and contended that physical and mental abuse meant "to torture or actions meant to humiliate or demean." Id. at 481. He argued that the shooting did not fit within this definition, and thus, the abuse and molestation exclusion was inapplicable. Id.

The Fourth District Court of Appeal did not agree with the son-in-law's definition of "physical abuse." Id. The court found that the plain meaning of the words "physical abuse" included an instance such as the shooting that took place. Id. The appellate court focused on the individual word "physical." The Miglino court stated:

> Black's Law Dictionary defines "physical," in pertinent part, as "[r]elating to or pertaining to the body, as distinguished from the mind or soul or the emotions." BLACK'S LAW DICTIONARY 1147 (6th ed. 1990). In pertinent part, Black's defines "abuse" as "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury," and "[t]o injure (a person) physically or mentally." BLACK'S LAW DICTIONARY 10 (8th ed. 2004). Similarly, a non-legal dictionary defines abuse as "[t]o hurt or injure by maltreatment." THE AMERICAN HERITAGE DESK DICTIONARY 5 (1981) (emphasis added).

34

> The plain meaning of "physical abuse" encompasses the intentional shooting of Miglino by the sister. Such an act clearly constitutes "physical…maltreatment," "physical injury," and "hurt or injur[y] by maltreatment" as described in the definitions used in deciding this issue.

Id. The court did not interpret the compound word phrase, "physical abuse." Importantly, the Miglino court also limited the holding to the specific facts of that case by stating, "We leave for another, day, however, the question of which other types of occurrences may reasonably be excluded within the framework of the policy exclusion." Id. at 482.

I find the facts in Miglino are distinguishable from the facts in the case before us, thus it is inapplicable. First, the insurance policy in Miglino was a homeowner's policy. The primary reason of a homeowner's policy is to insure a home against damage from storm, fire, and theft. Most consumers are not aware that their homeowner's policy provides liability coverage. Catalina West's case, however, involves a business owner's policy. The primary reason for the First Community liability policy was to provide lability insurance coverage for events or occurrences arising from the operation, management, maintenance, and security of the homeowner community. Catalina West incurred the extra expense of obtaining Umbrella/Excess liability coverage of $2,000,000.00 per incident and $4,000,000.00 aggregate, as stated in the affidavit of Tara Walker, who was the licensed

35

community association manager for Catalina West. Protection from money damages liability to homeowners and others was of great importance to Catalina West in purchasing the policy from First Community. In her affidavit, Walker stated that had First Community informed Catalina West that the insurance policy did not provide full liability coverage regarding the management, operation, maintenance, and security of the homeowners' association property, Catalina would have sought insurance coverage from another insurer.

I agree with Catalina West's position that a reasonable insured, such as in Miglino, would not expect their homeowner's policy to cover them for a shooting where the insured lent his gun to the shooter, and the shooting occurred away from the insured's home.[1] In Catalina West's case, the insured was attacked on the premises that was covered by the insurance policy. This is exactly the type of occurrence for which Catalina West sought insurance. The subject policy provides for an occurrence, which it defines as an accident. The underlying lawsuit does not describe an accident but rather a deliberate occurrence by a third-party other than the insured. Thus, I agree

---

[1] "[T]he proper inquiry is not whether a legal scholar can, with learned deliberation, comprehend the meaning of an insurance policy provision, but instead, whether it is understandable to a layperson." Hrynkiw v. Allstate Floridian Ins. Co., 844 So. 2d 739, 742 (Fla. 5th DCA 2003).

with Catalina West that this Court is not bound by the Miglino court's interpretation of "physical abuse" considering the distinguishable facts between Miglino and the case before us. See State v. Hayes, 333 So. 2d 51, 53 (Fla. 4th DCA 1976) ("[A]s between District Courts of Appeal, a sister district's opinion is merely persuasive.").[2, 3]

Courts construe insurance contracts according to their plain language. Fayad, 899 So. 2d at 1086. Insurance policies are treated like contracts, and ordinary contract principles apply to its interpretation and construction. Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 182 (Fla. 4th DCA 2015). Because the insurer writes the insurance policy, the insurer is bound by the policy's language, and the policy "is to be construed liberally in favor of the insured and strictly against the insurer." Adleberg, 698 So. 2d at 830. The insured must first establish that a loss occurred and is within the policy's terms, then the burden is on "the insurer to prove that one of the policy exclusions bars coverage." Sec. First Ins. Co. v. Czelusniak, 305 So. 3d 717, 718 (Fla. 3d DCA 2020). In addition, if there are two competing

---

[2] First Community conceded in its Initial Brief that Miglino is not binding on this Court.
[3] Miglino was decided in August 2015, almost ten years ago, and since then, it has not been cited by any Florida state appellate court to support the Miglino court's definition of "physical abuse."

interpretations that are reasonable, the interpretation favoring coverage must be the one adopted. Fayad, 899 So. 2d at 1086.

With respect to undefined terms in an insurance policy, "it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." Macedo, 228 So. 3d at 1113. "Terms used in a policy should be read in light of the skill and experience of ordinary people." Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So. 2d 26, 29 (Fla. 2d DCA 2004); see also Adelberg, 698 So. 2d at 830 ("[Terms are given] the meaning that an average buyer of an insurance policy would give to the term."). In addition, Florida courts have held that when construing insurance policies, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Anderson, 756 So. 2d at 34 . Furthermore, insurance companies that fail to define a term in a policy cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided in the policy. See CTC Dev. Corp., 720 So. 2d at 1076; State Comprehensive Health Ass'n v. Carmichael, 706 So. 2d 319, 320 (Fla. 4th DCA 1997).

The business owners' insurance policy at issue here provides for "business liability" coverage for a claim or suit "that the insured becomes legally obligated to pay as damages because of 'bodily injury,'" and includes

38

death resulting from "bodily injury." Policy coverage is excluded for a variety of reasons, including "Physical and Sexual Abuse Exclusions," which excludes "bodily injury" "because of, arising out of, related to or in any other way connected to" "physical abuse," "physical molestation," "sexual abuse," "sexual assault," "sexual battery," intentional or not. However, Macko's death resulted from "bodily injury" committed by an unknown assailant. Catalina West's position is that this is not the same as the types of physical or sexual abuse of a family member or an acquaintance as proposed in Miglino. Consequently, it contends the policy's "physical abuse" term is ambiguous and should have been interpreted in Catalina West's favor.

The majority concedes that a term is only ambiguous when it is of uncertain meaning, may be fairly understood in more ways than one, and is susceptible of interpretation in opposite ways. Clearly, one of the meanings of the word "physical" is "of or relating to the body." Physical, MERRIAM-WEBSTER (updated May 25, 2025), https://www.merriam-webster.com/dictionary/physical; see also Miglino, 174 So. 3d at 481 (referring to BLACK'S LAW DICTIONARY (6th ed. 1990) for definition of "physical": "[r]elating or pertaining to the body, as distinguished from the mind or soul or the emotions."). Thus, there is no ambiguity in that term. However,

39

it appears that cases from different jurisdictions support the position that the term "abuse" has more than one meaning, and thus, is ambiguous.

For example, the Miglino Court interpreted the term "abuse" to encompass any form of physically harmful treatment, no matter what its origin or how it came about. Miglino, 174 So. 3d at 481. On the other hand, the Supreme Judicial Court of Massachusetts in Dorchester Mutual Insurance Company. v. Krusell, 150 N.E.3d 731, 738 (Mass. 2020), cited by Catalina West, provided a different interpretation of the term "abuse" when it stated "that the term 'abuse' contemplates conduct that is more circumscribed than simply any form of physically harmful treatment, such that 'abuse' implies a qualitative aspect to the treatment beyond the fact that it causes harm."[4] The Krusell court then cited to Black's Law Dictionary 12 (11th ed. 2019), in finding that the term "abuse" meant: "[c]ruel or violent treatment of someone; [specifically] physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." (Emphasis

---

[4] Massachusetts and Florida follow similar insurance policy interpretation principles as follows: both jurisdictions construe the words of the policy according to their plain language in their usual ordinary sense; both hold that a term is ambiguous when it is susceptible to more than one interpretation; both interpret ambiguities against an insurer and in favor of the insured; both hold that exclusionary provisions are construed strictly against the insurer; both consider dictionary definitions in determining meaning; both read terms and phrases in the context of the exclusion and the policy as a whole; and both use the doctrine of noscitur a sociis. See Krusell, supra.

40

omitted). It appears that the <u>Krusell</u> court's interpretation of "physical abuse" is becoming the majority rule among jurisdictions. <u>Id.</u> at 438. <u>See, e.g.</u>, <u>Powers v. Certain Underwriters at Lloyd's London</u>, 2024 WL 3971137 (D. Nev. Aug. 26, 2024). As the Court in <u>Krusell</u> stated, "physical abuse" is interpreted by numerous courts to be a "subset of physically harmful treatment." <u>Krusell</u>, 150 N.E.3d at 744. <u>See</u>, <u>e.g.</u>, <u>Riley v. Maison Orleans II, Inc.</u>, 829 So. 2d 479, 491 (La. Ct. App. 2002) ("Physical abuse, as opposed to simple assault, is generally the act of a person in control, dominance, or authority who misuses his position to harm or mistreat a person over whom he exercises such control."); <u>Lexington Ins. Co. v. New Mexico Ass'n of Cnty.</u>, 2010 WL 11597831, No. 07-464 RB/LAM (D.N.M. June 28, 2010) (rejecting the definition of "abuse" that included all forms of mistreatment); <u>Quincy Mut. Fire Ins. Co. v. Kim</u>, 2015 WL 13574071, *2, No. 1483CV00847 (Mass. Super Ct. July 28, 2015) (denying summary judgment to an insurer where the insured, who was drunk, punched a stranger at a party who had grabbed the insured's arm outside the premises where the party took place; the court stated the insurer's "broad definition renders the 'physical abuse' exclusion meaningless because it invites all harmful conduct to fit into the exclusion's definition")

41

The difference in interpretation of the term "abuse" by the courts demonstrates that the term is susceptible to more than one meaning; thus, it is ambiguous. Macedo, 228 So. 3d at 1113. The exclusion is susceptible to multiple interpretations, which either provides coverage, as Catalina West contends, or limits coverage, as First Community contends, which creates a genuine dispute of material fact. Accordingly, I believe summary judgment in First Community's favor was erroneous. Even if both interpretations of the term "abuse" are reasonable, the interpretation that favors coverage for the insured must be the interpretation adopted, as previously discussed. Fayad, 899 So. 2d at 1086.

In my opinion, as a reasonable insured, Catalina West would not construe "physical abuse" to exclude coverage. This makes sense because the phrase "physical abuse," when read within the context of the "Physical and Sexual Abuse Exclusion" and the policy as a whole, leads to the conclusion that the trial court's interpretation of "physical abuse" to include all conduct that causes harm would mean the policy was illusory. This is prohibited by Florida law. Meister v. Utica Mut. Ins. Co., 573 So. 2d 128 (Fla. 4th DCA 1991) (rejecting insurer's interpretation because it would render coverage illusory). This is because the trial court's interpretation of the shooting by the unknown assailant as being encompassed by "physical

42

maltreatment," "physical injury," and "hurt or injury by maltreatment" means any treatment that harms a person physically is excluded, even such physical harm that results in "bodily injury" coverage, which First Community contracted to provide to Catalina West. When a policy exclusion has "completely swallowed up the insuring provision," the "grossest form of ambiguity" is created. Purelli v. State Farm Fire & Cas. Co., 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (citation omitted). Catalina West correctly posits that in a case such as the one before us, where an insurance policy is purchased for this very coverage for "bodily injury," the trial court's construction and misapplication of Miglino would undermine the fundamental purpose of this insurance policy and almost all businessowners' liability insurance policies.

Moreover, the Supreme Judicial Court of Massachusetts in Krusell analyzed how the trial court's construction of the phrase is contrary to the history of the adoption of abuse and molestation exclusions. Krusell, 150 N.E.3d at 741. The Krusell court noted that these types of exclusions, such as the one in the case before us, are not to be read broadly. Id. The court noted:

> An abuse and molestation exclusion originally was added to liability insurance policies to "reinforce" the intentional acts exclusion. See, e.g., 2 New Appleman Law of Liability Insurance § 13.06[12] (2019), citing Fire, Casualty, & Surety Bulletins, at Hpe-7. Broadly speaking, the exclusion shields insurers in two situations where the intentional acts exclusion proves

43

inadequate. The first is where a victim of abuse seeks to recover for an insured party's negligent supervision of a third-party assailant. The abuse and molestation exclusion originated in the 1980s in response to an increasing number of far-reaching sexual abuse claims against organizations that alleged harm to children arising from negligent hiring or supervision, rather than from the abuse itself. See Bartley, The Liability Insurance Regulations of Religious Institutions After the Catholic Church Sexual Abuse Scandal, 16 Conn. Ins. L. J. 505, 517-18, 530 (2010). Because the basis for such claims was the negligent conduct of a third party, rather than the intentional conduct of the alleged abuser, existing policy exclusions for intentional acts were insufficient to shield insurers from coverage obligations. See id.

A second set of circumstances is where a claim generally would be brought directly against an abuser, but the abuser is deemed incapable of intentional conduct by virtue of a mental disease or defect. Even though, ordinarily, abuse is intentional conduct, in such a situation the abuser's inability to act with intent renders the intentional acts exclusion inapplicable. See, e.g., Merrimack Mut. Fire Ins. Co. v. Ramsey, 117 Conn. App. 769, 770, 772-773, 982 A.2d 195 (2009) (abuse and molestation exclusion precluded coverage where insured sexually assaulted romantic partner but insurer could not rely upon exclusion for intentional acts because insured suffered from psychiatric disorder and could not act with intent).

Id. at 741-42 (footnotes omitted). In the case before us, the insurance policy followed this trend because the policy states that the "exclusion applies regardless of whether the acts enumerated above were committed intentionally, negligently, inadvertently, or with the belief, erroneous or otherwise, that the other party consented . . . ."

44

In addition, the <u>Krusell</u> court stated, "An abuse and molestation exclusion shields insurers from liability in such situations by precluding coverage for any claim 'arising out of' abuse or molestation, as opposed to claims seeking recovery on the basis of intentional conduct." <u>Id.</u> at 742. The physical and sexual abuse exclusion in the subject policy before this Court also includes the "arising out of, related to or in any other way connected to" language that would shield First Community from negligence claims that result from properly excluded conduct. Accordingly, the <u>Krusell</u> court stated:

> The contexts in which abuse and molestation exclusions arose are instructive here. First, that the rationale for including such exclusions was to enforce the intentional acts exclusion in particular factual circumstances confirms that an ordinary understanding of the term "physical abuse" remains limited to deliberately harmful treatment. Insurers did not adopt the abuse and molestation exclusion to expand the scope of conduct for which coverage was precluded so as to include <u>any</u> physically harmful treatment. Rather the rationale was to shield themselves from liability for abuse or molestation claims where they unexpectedly could not rely upon the intentional acts exclusion to preclude coverage. In addition, the fact that one of the contexts in which such provisions first arose involved the physical or sexual abuse of parishioners by priests reaffirms that the term "abuse" implies a qualitative aspect, such as imbalance of power, to the harmful conduct.

<u>Id.</u> at 742-43.[5]

---

[5] One feature of cases where abuse exclusions have been found to preclude coverage is where there is an imbalance of power, such as in a case with a domestic violence component. For example, <u>Miglino</u> involved a domestic violence scenario where the insured's sister shot her son-in-law while he was

Catalina West further contends that the trial court misapprehended that the term "physical abuse" is a compound word, and that this matters because compound words carry "a definition that is different than mere reliance on the definition of one of its component words []." <u>Dep't of Highway Safety & Motor Vehicles v. Chakrin</u>, 304 So. 3d 822, 833 (Fla. 2d DCA 2020). As stated in Grammarly.com:

> Compound words are when two or more words combine to form a new single word or a phrase that acts like a single word.
>
> There are three different types of compound words in grammar: open compound words with spaces between the words (ice cream), closed compound words with no spaces (firefighters), and hyphenated compound words (up-to-date).
>
>  . . .
>
> Compound words have distinct meanings that differ from those of the words they're made of. For example, the compound word grandparent is made from the individual words grand and parent. Grandparent acts as its own word with unique definition, distinct from the definitions of grand and parent.
>
>  . . .

---

in divorce proceedings with the insured's sister's daughter. <u>Miglino</u>, 174 So. 3d at 480-82. <u>See also, e.g.</u>, <u>McAuliffe v. Northern Ins. Co. of N.Y.</u>, 69 F.3d 277, 279-80 (8th Cir. 1995) (finding abuse and molestation exclusion precluded coverage of claim because it was based on a sexual relationship between a married parishioner and her priest); <u>American Commerce Ins. Co. v. Porto</u>, 811 A.2d 1185, 1201 (R.I. 2002) (finding abuse and molestation exclusion precluded coverage of claim because it was based on a claim about a Boy Scout leader's sexual abuse of a troop member).

46

Open compound words have spaces in between the words, which can make them hard to identify. But despite how they look, open compound words always act like single words. They always appear together in the same order, and they each have their own unique meanings.

. . .

Examples of open compound words, [for e.g.] [include,] black eye[,] heart attack[,] prime minister[,] cell phone[,] . . . [,] full moon[,] . . . [,] role model[,] . . . [,] slam dunk[,] sleeping bag[,] time capsule[,] . . . [,] video game[,] vending machine[,] waiting room[,] . . . .

Matt Ellis, <u>Compound Words: Open, Closed, or Hyphenated?</u>, GRAMMARLY (updated January 21, 2025).[6]

As the example Catalina West gives in support of its position, "abuse" is often joined with other words when referring to mistreatment in situations where there is an imbalance of power or exploitation of authority such as in the following terms: "adult abuse," "child abuse," "domestic abuse," "elder abuse," "sexual abuse," and "spousal abuse." Thus, the phrase "physical abuse" is an open compound word that has a meaning of its own, separate and apart from each of the two words that make up the phrase. As to its plain and commonly accepted meaning, the American Psychological Association defines the phrase "physical abuse" as:

---

[6]    https://www.grammarly.com/blog/grammar/open-and-closed-compound-words/ (emphasis omitted).

47

deliberately aggressive or violent behavior by one person toward another that results in bodily injury. Physical abuse may involve such actions as punching, kicking, biting, choking, burning, shaking, and beating, . . . . It is most frequently observed in relationships of trust, particularly between parents and children or between intimate partners (e.g., in a marriage [or other relationship]) . . . .

Physical Abuse, AMERICAN PSYCHOLOGICAL ASSOCIATION (updated on April 19, 2018), https://dictionary.apa.org/physical-abuse. Thus, the phrase "physical abuse" is a common compound word with a distinct definition, separate from the definitions of the word "physical" and the word "abuse."

Here, the record does not indicate there was any relationship of trust between the victim, Macko, and the unknown assailant. The occurrence in the underlying case was a random act of violence by an unknown assailant that does not fit in with the commonly accepted meaning of the phrase "physical abuse." If the unknown assailant were arrested for the shooting, he or she would not be charged with physical abuse. The assailant would be charged with aggravated assault with a deadly weapon or murder.

Also, applicable here is "the doctrine of *noscitur a sociis*, a word is known by the company it keeps, and one must examine the other words used in a string of concepts to derive the drafters' intent." Aeorothrust Corp. v. Granada Ins. Co., 904 So. 2d 470, 472 (Fla. 3d DCA 2005). This doctrine applies to contracts as well, not just statutes. Churchville v. GACS, Inc., 973

48

So. 2d 1212, 1215 (Fla. 1st DCA 2008). Applying this rule to the "physical abuse" exclusion in the First Community policy, the trial court should have construed the phrase "physical abuse" relative to the other acts in the exclusion to interpret the meaning of "physical abuse." In this case, other acts listed included, for example, sexual abuse. Lexington Ins. Co. v. New Mexico Ass'n of Cntys., 2010 WL 11597831, *7, No. 07-464 RB/LAM, (D.N.M. June 28, 2010) ("The fact that 'abuse' is listed with the term 'molestation' indicates that it refers to 'sexual' abuse and molestation."). The exclusion confusingly includes "physical abuse" in the same line as "sexual abuse." "Sexual abuse" refers to acts of a sexual or physical touching of an inappropriate sexual nature. This is not applicable in any way to the type of incident that occurred in the underlying lawsuit.

The majority suggests that Catalina West's interpretation is "somewhat novel," but court decisions indicate that this narrower definition goes back to at least 2010. Recent decisions indicate the trend in the United States is for courts not to apply abuse exclusions in insurance policies in cases that deal with physical harm by an unknown assailant or an assailant with no relationship to the victim. The Krusell case, as previously discussed, is one such example. See also Dorchester Mut. Ins. Co. v. Miville, 204 N.E.3d 382, 391-92 (Mass. 2023) (finding that abuse and molestation exclusion did not

49

apply where the unprovoked assailant charged at a 61-year-old man without warning, punched him in the face, knocked him to the ground, and kicked him several times); Riley, 829 So. 2d at 484, 490-91 (stating that sexual and/or physical abuse exclusion did not apply on a claim brought by nursing home after one resident physically attacked another resident with a pipe; finding that the incident did not constitute "physical abuse" because "[p]hysical abuse, as opposed to simple assault, is generally the act of a person in control, dominance, or authority who misuses his position to harm or mistreat a person over whom he exercises such control. The act of one nursing home resident attacking a fellow resident is not abuse because the element of control is lacking"); New Mexico Ass'n of Cntys., supra (rejecting broad definition of abuse to mean "mistreat," to expand the exclusion to the strip searches of detention center detainees); Norgren v. Mut. of Enumclaw Ins. Co., 2015 WL 3948145, *2, No. 3:14-cv-01591-0SB (U.S. Dist. Ct. D. Or. June 29, 2015) (finding that physical and mental abuse exclusion did not preclude coverage for claim brought against parents whose middle-school-aged child repeatedly assaulted a classmate; court rejected insurer's broad definition of "physically harmful treatment" and stated, "Taken at face value, that definition would encompass all 'treatment' that was 'physically harmful,' and the exception then would swallow the rule"); Kemper Independence Ins.

Co. v. Tarzia, 2012 WL 2327703 No. 3:11-cv-294 (JCH), at *7 (U.S. Dist. Ct. D. Conn. June 19, 2012) (court held that acts taken in self-defense did not fall under the "physical and mental abuse" policy exclusion); N.M. Ass'n of Cntys., supra at *7-*8 ("The fact that 'abuse' is listed with the term 'molestation' indicates that it refers to 'sexual' abuse and molestation. In its common and ordinary usage, molestation refers to 'sexual' molestation. . . . [I]f the Court were to define 'abuse' or 'humiliation' broadly, as Lexington proposes, these exclusions would swallow up almost every other provision in the parties' agreement, as every . . . personal injury would arguably represent a form of abuse or humiliation."). As these cases show, courts find coverage where the physical harm consists of physical injuries or deaths by an unknown assailant or assailant with no association to the victim.

The majority states that numerous courts from other jurisdictions have interpreted the exclusion in the manner the majority has and cites to twenty-three cases listed on pages 16 through 20 of the majority's opinion. However, except for American Family Mutual Insurance Company v. Chiczewski, 700 N.E.2d 777, 778 (Ill. App. Ct. 1998) (which was cited in the Krusell opinion and which Krusell declined to follow), all the cases are distinguishable in that the abuse was committed by someone who knew the victim, was in a relationship with the victim, or had some sort of relationship to the victim or

51

the abuse involved sexual abuse or molestation, for e.g., hazing by a fraternity brother of one of the incoming pledges; a child care worker or babysitter taking care of a child in a home, daycare, or school; an elderly person in the care of an adult care facility; adoptive parents taking care of a newly adopted child; a motel owner sexually exploiting two teenagers who the owner knew; a priest who was in a relationship with parishioner he was counseling; a domestic violence situation between a girlfriend and a boyfriend; neighbors who knew each other; a high school female sexually molested and injured by two high school males attending a high school party; a nightclub attendee who was assaulted by a bouncer working at the nightclub; and a minor with disabilities battered and verbally abused by her teacher.

The majority states Catalina West frames its analysis from the insured's perspective — what would a reasonable insured have reasonably believed was covered under the policy. This majority asserts this doctrine of reasonable expectations has been rejected by the Florida Supreme Court. See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So. 3d 541, 549 (Fla. 2012). However, the Florida Supreme Court has not applied the doctrine of reasonable expectations because, as it has stated, "There is no need for it if the policy provisions are ambiguous because in Florida

52

ambiguities are construed against the insurer." Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1140 (Fla. 1998). In Am. Strategic Ins. Co. v. Lucas-Solomon, 927 So. 2d 184 (Fla. 2d DCA 2006), the Second District Court of Appeal stated:

> In interpreting an insurance contract we must consider the intent and reasonable expectations of the parties in entering into the agreement. Hence, we must evaluate not only [the insurer's] contract form, but also [the insured's] knowledge and understanding as a layman and his normal expectation of the extent of coverage of the policy.

Id. at 186 (citing Commerce Nat'l Bank in Lake Worth v. Safeco Ins. Co. of Am., 252 So. 2d 248, 252 (Fla. 4th DCA 1971)).

In addition, the Massachusetts Supreme Court did not apply the reasonable expectations doctrine in Krusell. Krusell used the phrase "reasonable insured," as does Catalina West, in the same manner that Florida courts have used the phrase when they refer to giving terms "the meaning that an average buyer of an insurance policy would give them," and when they hold that courts are to interpret ambiguous provisions in favor of the insured as a "layperson" or "man on the street" would understand the provisions to be. See Hrynkiw, 844 So. 2d at 742 ("[T]he proper inquiry is not whether a legal scholar can, with learned deliberation, comprehend the meaning of an insurance policy provision, but instead, whether it is understandable to a layperson." (citing State Farm Fire & Cas. Co. v. Castillo,

53

829 So. 2d 242, 244 (Fla. 3d DCA 2002) (holding that policy terms "should be given their plain and ambiguous meaning as understood by the 'man-on-the-street.'")); see also Adelberg, 698 So. 2d at 830; Royal Crane, LLC, 169 So. 3d at 182. First Community concedes this point in its Answer Brief.

Finally, the majority states that the policy under review excludes liability coverage for criminal acts; however, this is not entirely accurate. First Community did not have an assault and battery exclusion in the subject policy. In its Reservation of Rights letter, First Community stated, "This incident is alleged to have involved assault and battery . . . ." If First Community wanted to exclude assault and battery, it could have included an assault and battery exclusion in the insurance policy. See Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd., 721 So. 2d 402, 404 (Fla. 3d DCA 1998) (holding that negligence claim against store owner for failing to maintain the premises/provide adequate security arising out of an assault and battery of a patron robbed at knife point and stabbed was excluded by the policy's assault and battery exclusion); Wilshire Ins. Co. v. Poinciana Grocer, Inc., 151 So. 3d 55, 56-57 (Fla. 5th DCA 2014) (finding assault and battery exclusion precluded coverage for store patron's alleged stabbing of a trash collector on the store premises). First Community chose not to include such an exclusion.

54

## CONCLUSION

For the reasons stated, I do not believe we are constrained to follow Miglino and conclude that the term "physical abuse" in the policy is ambiguous. Although the trial court believed it was bound by Miglino, the facts in Miglino differ significantly from those of the case before us. Thus, we need not follow Miglino. Florida Dept. of Transp. v. Juliano, 801 So. 2d 101, 106 (Fla. 2001) ("Under the law of the case doctrine, a trial court is bound to follow prior rulings of the appellate court as long as the facts on which such decision are based continue to be the facts of the case."). Having concluded that the exclusionary provision of the policy is ambiguous and susceptible to more than one interpretation, the "meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy." State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986). Consequently, I would hold that a "physical abuse" exclusion such as the one in the case before us does not include an ambush and shooting by an unknown assailant. I would thus reverse the final declaratory judgment in favor of First Community based on the trial court's Final Judgment in Favor of Plaintiff granting First Community's motion for summary judgment, with respect to the duty to defend and indemnify.

55